# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ERBIT NAVARRO-TERAN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:15-cv-1157 |
| ) | Judge Aleta A. Trauger |
| ) | |
| EMBRAER AIRCRAFT MAINTENANCE ) | |
| SERVICES, INC., ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM

The defendant, Embraer Aircraft Maintenance Services, Inc. ("Embraer"), has filed a Motion to Dismiss (Docket No. 5), to which the plaintiff, Erbit Navarro-Teran, has filed a Response in Opposition (Docket No. 9), and Embraer has filed a Reply (Docket No. 12). For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND[1]

Mr. Navarro-Teran, a Hispanic man, was employed by Embraer as a mechanic from 2010 until his termination on February 6, 2015. During his five years at Embraer, Mr. Navarro-Teran alleges that he was subjected to discrimination, harassment, and bullying because of his race, national origin, and perceived disability. Mr. Navarro-Teran also alleges that his termination in 2015 was based on his perceived disability and in retaliation for reports regarding his treatment that he made to his supervisors and to the Equal Employment Opportunity Commission ("EEOC"). In support of his claims, Mr. Navarro-Teran recites a litany of alleged harassing and

---

[1] Unless otherwise noted, the facts recounted in this section are drawn from the Complaint (Docket No. 1) and are assumed to be true for purposes of evaluating the Motion to Dismiss.

1

discriminatory language and behavior on the part of his co-workers and supervisors, with the bulk of the allegedly discriminatory and harassing behavior occurring in 2011 and 2012.

Mr. Navarro-Teran's allegations begin in February of 2011, when he suffered a deep laceration to his shin but was discouraged from seeking medical attention. According to Mr. Navarro-Teran, he developed a staph infection as a result of the wound and was forced to seek medical attention three days after the accident. Several months later, in May of 2011, Mr. Navarro-Teran was working light duty – presumably because of the injury to his leg, though the Complaint does not clarify – when the Hangar Supervisor, Steve Potter, asked him why he was away from his regular work area. When Mr. Navarro-Teran advised Mr. Potter that he was on light duty, Mr. Potter called Mr. Navarro-Teran a "slacker." (Docket No. 1 ¶ 9.)

In June of 2011, Project Manager Dana Hultine requested that Mr. Navarro-Teran work outside of, and in addition to, his regularly scheduled shift to translate for a "Hispanic airline." (*Id.* ¶ 10.) Mr. Navarro-Teran had to cancel a physical therapy appointment to accommodate the request – again, presumably related to the injury to his leg – and he claims that he never received compensation for the additional time that he worked translating for Embraer. Shortly after he performed this extra work, Mr. Navarro-Teran's shift was changed, which allegedly required him to cancel his remaining physical therapy appointments.

In August of 2011, Mr. Navarro-Teran's shift was changed two more times, and he performed additional uncompensated work translating for a client of Embraer. At this time, Mr. Navarro-Teran alleges that his co-workers began to make harassing and discriminatory comments related to his race and national origin, which Mr. Navarro-Teran reported to his supervisors to no avail. For example, Mr. Navarro-Teran alleges that an unidentified co-worker called him a "motherfucker" and, on two separate occasions, brayed like a donkey at him. (*Id.*

¶ 12.)  At one point, after braying like a donkey at him, this co-worker allegedly threw a cardboard box at his head.  According to Mr. Navarro-Teran, other non-Hispanic employees were not subjected to these "obscenities [and] taunts."  (*Id.*)  Mr. Navarro-Teran further alleges that he reported the incident in which his co-worker threw a box at him to Embraer's Human Resources Director, Steve Moldrem, which resulted in Mr. Navarro-Teran's co-workers referring to him as a "baby."  (*Id.* ¶ 13.)  Mr. Navarro-Teran also reported the repeated shift changes, harassment, and discrimination he was experiencing to "Bob Campbell,"[2] who allegedly took no action to investigate or rectify the situation.  (*Id.* ¶ 17.)

Later in August of 2011, Mr. Navarro-Teran alleges that his shift lead, Levi Schmidt,[3] began to make "racial comments" and harass Mr. Navarro-Teran about the length of time it took him to complete tasks.  (*Id.* ¶ 18.)  The Complaint then contains the following allegations with no reference as to their timing:

- Mr. Schmidt insulted Mr. Navarro-Teran's intelligence, criticized work of his that had already passed inspection, and used profanity over the public address system when summoning Mr. Navarro-Teran into areas in which he was already present.  (*Id.* ¶ 21.)

- Mr. Schmidt attempted to "reassign" Mr. Navarro-Teran by claiming that other mechanics would not work with him because he was too slow – comments Mr. Navarro-Teran's coworkers denied having made – and assigned Mr. Navarro-Teran to jobs requiring cleaning, to which non-Hispanic workers were not assigned.  (*Id.* ¶ 19.)

- Mr. Navarro-Teran again complained to Mr. Moldrem, who told Mr. Navarro-Teran that he would "follow [up on] the problem and get back" to him.  (*Id.* ¶ 22.)

- Mr. Navarro-Teran was "accosted" by several co-workers while on break and studying for the U.S. citizenship test.  According to Mr. Navarro-Teran, these co-

---

[2] The Complaint does not identify the position that Mr. Campbell held at Embraer.

[3] Mr. Schmidt is intermittently referred to as both "Schmidt" and "Schmitt" in the Complaint.  (*See, e.g.*, Docket No. 1 ¶¶ 18, 26.)  For consistency, and assuming that these names do not refer to two different supervisors, the court will refer to him as Mr. Schmidt.

> workers told him that his English was bad and that he should probably return to school. When Mr. Navarro-Teran reported this incident to shift lead Bobby Whitener, Mr. Whitener defended the co-workers and said that Mr. Navarro-Teran should know English if he was taking the citizenship test. (*Id.* ¶ 23.)

- Mr. Schmidt instructed Mr. Navarro-Teran, and only Mr. Navarro-Teran, to minutely track his activities during the day. (*Id.* ¶ 24.)

- Mr. Schmidt instructed Mr. Navarro-Teran to clean a section of an airplane that contained human waste, advising him that measures had been taken to minimize exposure to hazardous material. The required measures had not, however, been taken, and Mr. Navarro-Teran and a co-worker were covered in human waste while performing their duties. Mr. Schmidt laughed at Mr. Navarro-Teran and assigned him to reclean the same section of the plane despite the fact that it had already passed inspection. (*Id.* ¶ 25.)

- Mr. Navarro-Teran went to "Human Resources" to complain about being repeatedly assigned hazardous jobs because he is Hispanic. (*Id.* ¶ 27.)

As best the court can discern, the allegations in the Complaint proceed in chronological order and, therefore, these incidents likely occurred between August of 2011 and December 31, 2012, the next date to be identified in the Complaint. (*See id.* ¶¶ 17–29 (detailing the allegations outlined above after allegations relating to August 2011 but before allegations relating to December of 2012).)

The Complaint then jumps ahead in time to a series of incidents that occurred in 2013 and 2014. Mr. Navarro-Teran alleges that, on June 25, 2013, he was required to make a public explanation to his co-workers regarding an accident in which he had damaged a plane he was repairing. According to Mr. Navarro-Teran, other employees had not been required to speak publicly regarding their mistakes in the past, but Mr. Navarro-Teran was told that these public explanations would become standard procedure after accidents. Six months later, however, a non-Hispanic employee set a plane on fire and was not required to speak publicly regarding his mistake. Similarly, on January 10, 2014, Mr. Schmidt caused a collision between the wing of one plane and the tail of another, but Mr. Schmidt was not required to speak to his co-workers

4

regarding the accident.

On January 14, 2014, shortly after Mr. Schmidt's accident, Mr. Navarro-Teran alleges that he was wrongly accused of stealing from another employee's toolbox. When Mr. Navarro-Teran attempted to defend himself, the other employee told him to "[s]hut the fuck up, Mexican motherfucker." (Docket No. 1 ¶ 32.) Mr. Navarro-Teran does not allege that he informed anyone at Embraer of this incident, but he does allege that, in March of 2014, three months later, he filed his first Charge of Discrimination with the EEOC (the "March 2014 Charge"). The Complaint does not describe the contents of the March 2014 Charge, state the date that Mr. Navarro-Teran received notice of his right to sue, or describe any comment made to him regarding the March 2014 Charge by anyone at Embraer.

Mr. Navarro-Teran makes no further allegations regarding his treatment after his filing of the March 2014 Charge until "late 2014," when he suffered an ankle injury at work. (*Id.* ¶ 34.) This injury required surgery, and Mr. Navarro-Teran had to take leave from work for several months as a result of the injury. Mr. Navarro-Teran alleges that, on January 2, 2015, a representative from Embraer's human resources department contacted him to inquire about his return to work. When Mr. Navarro-Teran advised her that he could return to light duty, he claims that she "sarcastically quipped, 'Well, that sure was a quick recovery from a month ago 'til today!'" (*Id.* ¶ 35.) Mr. Navarro-Teran returned to work at Embraer less than two weeks later, and he alleges that, on his return, a co-worker named Brent told him: "You didn't have surgery on your ankle, it was on your brain! They can't fix stupid! You will be stupid forever!" (*Id.* ¶ 36.) Finally, on January 15, 2015, Mr. Navarro-Teran alleges that an inspector named Russell asked him whether anyone had welcomed him back, and when Mr. Navarro-Teran replied that they had, Russell responded: "You know it's a lie, because nobody wanted you to

come back!" (*Id.* ¶ 37.) Mr. Navarro-Teran alleges that he continued to suffer "discrimination, harassment, bullying, and sarcastic comments" until his termination on February 6, 2015.

## PROCEDURAL HISTORY

On November 3, 2015, Mr. Navarro-Teran filed the Complaint against Embraer, alleging that Embraer had violated (1) Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*; (2) the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §4-21-101 *et seq.*; (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (4) the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103; and (5) Tennessee common law prohibiting retaliation. (Docket No. 1 ¶¶ 39–59.)

On December 3, 2015, Embraer filed a Motion to Dismiss the Complaint. (Docket No. 5.) In the Memorandum supporting the motion, Embraer argues that (1) Mr. Navarro-Teran failed to allege sufficient facts to demonstrate that he had exhausted his administrative remedies and timely filed the Complaint with respect to his Title VII and ADA claims, (2) Mr. Navarro-Teran's state-law claims "prior to November 3, 2014" are barred by the applicable statute of limitations, and (3) pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint fails to make sufficient factual allegations to state a claim upon which relief can be granted. (Docket No. 6.) On December 17, 2015, Mr. Navarro-Teran filed a Response in opposition to the motion, accompanied by a second Charge of Discrimination that Mr. Navarro-Teran had filed with the EEOC in May of 2015 (the "May 2015 Charge") and the Notice of Right to Sue that he received from the EEOC related to the May 2015 Charge. (Docket Nos. 9, 9-3 (May 2015 Charge), 9-4 (August 2015 Right to Sue).)[4] In the Response, Mr. Navarro-Teran argues that (1) the May 2015 Charge demonstrates that he did, in fact, properly exhaust the administrative remedies related to

---

[4] Mr. Navarro-Teran did not, however, attach the March 2014 Charge or the Notice of Right to Sue that he received from the EEOC related to that charge to his Response.

6

his federal claims; (2) under the continuing violations theory, his state-law claims are not time-barred; and (3) the Complaint adequately alleges facts that demonstrate that he is entitled to relief. (Docket No. 9.)

Embraer sought, and obtained, leave to file a Reply in Support of its Motion to Dismiss, and the Reply was filed with the court on January 8, 2016. (Docket Nos. 11, 12.) In light of the May 2015 Charge filed with Mr. Navarro-Teran's Response, Embraer withdrew its argument regarding Mr. Navarro-Teran's failure to exhaust his administrative remedies. (Docket No. 12, p. 1.) Embraer now argues, however, that any of Mr. Navarro-Teran's federal claims accruing prior to July 25, 2014 are time-barred, because they accrued more than 300 days prior to the date that Mr. Navarro-Teran filed the May 2015 Charge. (*Id.* at p. 2.) In the Reply, Embraer also continues to argue that Mr. Navarro-Teran's state law claims that accrued prior to November 3, 2014 are time-barred and that the Complaint fails to plead factual content sufficient to survive a motion to dismiss. (*Id.* at pp. 2–5.)

## **LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *accord Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation marks omitted). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts

alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Detailed factual allegations are not required, but a complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *accord Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

As a preliminary matter, the court notes that the causes of action outlined in the Complaint are not a model of clarity, and Mr. Navarro-Teran describes theories of liability in his Response that are not fully articulated in the Complaint and fails to argue claims in his briefing that *are* plainly stated in the Complaint. In light of this confusion, and based on its review of the pleading and the briefings, the court concludes that the Complaint is appropriately construed as asserting the following claims: (1) that Mr. Navarro-Teran was unlawfully terminated on the basis of his perceived disability in violation of the ADA and TDA, and in retaliation for his filing of the March 2014 Charge with the EEOC and complaints regarding his treatment to others at Embraer;[5] and (2) that Embraer subjected Mr. Navarro-Teran to a hostile work environment on

---

[5] In his Response, Mr. Navarro-Teran also appears to argue that Embraer terminated him on the basis of his race and national origin in violation of Title VII and the THRA. (Docket No. 9, p. 11 (noting in his argument regarding his Title VII and THRA claims that "Plaintiff averred

the basis of his race, national origin, and perceived disability, in violation of Title VII, the THRA, the ADA, and the TDA.[6]

Mr. Navarro-Teran also alleges that Embraer "did segregate or classify" him on the basis of his race and national origin and thereby "deprive[d] him of employment opportunities or otherwise adversely affect[ed] his status as an employee." (Docket No. 1 ¶¶ 41, 46). This language is identical to that used in § 2000e-2(a)(2) of Title VII, which provides the cause of action for "disparate impact" claims. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015) (noting that § 2000e-2(a)(2) of Title VII provides a "disparate impact" claim and is the only cause of action under Title VII other than a claim of "intentional discrimination"). It does not appear, however, that Mr. Navarro-Teran meant to plead a "disparate impact" claim under Title VII, and the inclusion of this language was likely the result of an oversight or mistake. Disparate-impact claims under Title VII apply to employment practices that "are not intended to discriminate but in fact have a disproportionately adverse effect on minorities," such

---

that he was terminated on February 6, 2015[,] which satisfies the requirement that he be subjected to an adverse employment action").) The Complaint never pleads, however, that the claims under Title VII arise from Mr. Navarro-Teran's termination, nor do the factual allegations relate his termination in any way to his race or national origin. (*See* Docket No. 1 ¶¶ 39–48 (stating Mr. Navarro-Teran's Title VII and THRA causes of action but never mentioning his termination).) The court cannot, therefore, construe Mr. Navarro-Teran's termination as a basis for his Title VII and THRA claims of racial and national origin discrimination.

[6] Mr. Navarro-Teran never explicitly alleges hostile work environment as a basis for his claims in the Complaint, and he only cursorily argues the point in his Response. (*See* Docket No. 9, pp. 9, 12 (arguing generally that Mr. Navarro-Teran has "more than plead [sic] a work environment hostile to him," with no further explanation).) The Complaint does, however, make repeated allegations regarding "the harassing and discriminatory treatment" to which Mr. Navarro-Teran was subjected and Embraer's failure to remedy that harassment and discrimination. (Docket No. 1 ¶¶ 42, 47, 52.) The court, therefore, concludes that the Complaint gives Embraer sufficient notice of the nature of Mr. Navarro-Teran's claims regarding his treatment while working at Embaer to justify construing them as claims for hostile work environment under Title VII, the THRA, the ADA, and the TDA.

as a promotion examination or certain employment prerequisites. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Mr. Navarro-Teran has not alleged *any* employment practice of Embraer's that has a disproportionately adverse effect on minorities but, rather, the kind of personally discriminatory treatment that is typically reviewed under a "intentional discrimination" theory, such as hostile work environment or discriminatory termination. The court, therefore, concludes that Mr. Navarro-Teran did not intend to assert a disparate-impact claim and will not construe the Complaint as asserting such a claim.

The court turns to determining whether the Complaint makes sufficient factual allegations to allow the court to reasonably infer that Embraer is liable for any of Mr. Navarro-Teran's claims. While Mr. Navarro-Teran is not – as both parties correctly note – required to prove a *prima facie* case for his claims of discrimination at this stage, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012), he is still required to plead plausible facts supporting the material elements of his claims. As noted above, the Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to discrimination claims. *Id.* at 610. Thus, although the Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that Embraer either discriminated against Mr. Navarro-Teran with respect to an adverse employment event or a hostile work environment. *Keys*, 684 F.3d at 610. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If the court can reasonably draw the necessary inference from the factual material stated in the complaint, then Mr. Navarro-Teran has satisfied the plausibility standard.

## I. Claims Related to Mr. Navarro-Teran's Termination

Mr. Navarro-Teran was terminated on February 6, 2015, and, while there are few allegations in the Complaint concerning the circumstances surrounding his termination, Mr. Navarro-Teran maintains that he was terminated on the basis of his perceived disability in violation of the ADA and TDA, and in retaliation for his filing of the March 2014 Charge with the EEOC and complaints made to others at Embraer regarding his treatment.

### A. Discrimination Under the ADA and TDA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also* Tenn. Code Ann. § 8-50-103 (prohibiting "discrimination in the hiring, firing and other terms and conditions of employment" by "any private employer" on the basis of disability). While a close question, the court concludes that Mr. Navarro-Teran's claim of discriminatory termination under the ADA and TDA is supported by more than the "'naked assertion[s]' devoid of 'further factual enhancement'" that *Twombly* and *Iqbal* prohibit. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, Mr. Navarro-Teran has pleaded facts from which the court can draw reasonable inferences supporting the material facts of his discrimination claims under the ADA and TDA; namely, that (1) he was regarded by Embraer as having a disability, (2) he was capable of performing his job when he returned to work, and (3) he was terminated because of his perceived disability. *See, e.g.*, *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (ADA); *see also Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004) ("A claim brought under the [TDA] is analyzed under the same principles as those utilized for the [ADA].").

Mr. Navarro-Teran has pleaded that, in late 2014, he suffered an injury to his ankle that

required him to have surgery and to miss several months of work. After being on leave for several months, during which time he participated in physical therapy, Mr. Navarro-Teran spoke to a representative from Embraer's human resources department and requested that he be allowed to return to work on "light duty." Mr. Navarro-Teran was allowed to return to work at Embraer shortly thereafter and, approximately a month after his return, he was terminated. Though these allegations are admittedly thin, they do allow the court to reasonably draw the inference that Mr. Navarro-Teran was regarded as being disabled, based on the fact that Embraer knew that he was on leave for a medical condition for several months and that he had requested "light duty" when he returned. The court also finds it reasonable to infer that Mr. Navarro-Teran was capable of performing his job duties based on the very fact that, after his conversation regarding his status with the human resources representative, Mr. Navarro-Teran was allowed to return to work. Furthermore, the short period of time – only one month – between Mr. Navarro-Teran's return from leave and his termination provides a reasonable basis for the inference that Mr. Navarro-Teran's perceived disability was the reason for his termination. *Cf. Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (allowing temporal proximity between a protected activity and an adverse employment action to constitute sufficient evidence of a causal connection for a *prima facie* case of retaliation). Accordingly, the court finds that the Complaint states plausible content that supports the necessary inferences to find viable claims and to conclude that the Complaint puts Embraer on sufficient factual and legal notice of Mr. Navarro-Teran's disability discrimination claim.

### B. Retaliatory Discharge Under Tennessee Common Law

Tennessee common law prohibits employers from retaliating against employees by terminating them "for taking an action that public policy encourages or for refusing to do

something that is inconsistent with public policy." *Williams v. City of Burns*, 465 S.W.3d 96, 109 (Tenn. 2015). A common law retaliatory discharge claim has four elements: (1) the employment was "at will;" (2) the employee was discharged; (3) the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason that violates a clear public policy; and (4) the employee's exercise of protected rights was a substantial factor in the employer's decision to discharge the employee. *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 781 (Tenn. 2010).

Mr. Navarro-Teran alleges that Embraer terminated him in retaliation for his filing of the March 2014 Charge with the EEOC and his complaints to others at Embraer regarding his treatment.[7] Mr. Navarro-Teran has not, however, pleaded any factual content supporting an inference that the March 2014 Charge or Mr. Navarro-Teran's reports of discriminatory and harassing behavior were a factor in Embraer's decision to terminate him. It is simply not plausible that Mr. Navarro-Teran's complaints to the EEOC or to his supervisors at Embraer, which all occurred in or before March of 2014, caused Mr. Navarro-Teran's termination in February *of 2015*, over one year later. *See House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462–63 (6th Cir. 2015) (noting that the plausibility standard from *Twombly* and *Iqbal*

---

[7] Embraer argues that the Complaint does not identify the "statutory or constitutional right," the exercise of which was allegedly a substantial factor in the decision to terminate Mr. Navarro-Teran. (Docket No. 6, p. 11; Docket No. 12, p. 5.) On the contrary, the allegations in the Complaint clearly state that Mr. Navarro-Teran was terminated in retaliation for his filing of the March 2014 Charge (Docket No. 1 ¶¶ 56–57) and, even though the connection is not explicitly drawn in the Complaint, the allegations do outline multiple instances in which Mr. Navarro-Teran complained of his treatment to his supervisors and to the human resources department at Embraer (*id.* ¶¶ 13, 15, 17, 22, 23, 27). While these allegations do not perfectly convey the basis for Mr. Navarro-Teran's retaliation claim, the Complaint does provide sufficient notice of the factual basis for the claim, and the court construes the retaliation claim to include retaliation for both the March 2014 Charge and Mr. Navarro-Teran's complaints to others at Embraer.

13

"applies to the element of causation in discrimination claims"). Absent additional factual allegations regarding the circumstances of Mr. Navarro-Teran's termination and his reasons for believing that he was terminated in retaliation for the complaints that he made, the court cannot reasonably infer that his complaints were a factor in that termination.

Mr. Navarro-Teran argues that he was not required to plead additional facts supporting his claim that his termination was the result of retaliatory animus, because – according to Mr. Navarro-Teran – "temporal proximity may be sufficient to establish causation." (Docket No. 9, p. 10 (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009).) While it is true that the Sixth Circuit has allowed mere temporal proximity to establish causation for retaliation claims, it has only allowed that in cases in which the time elapsed between the protected activity and the retaliation was on the order of days, or at most, a few months. *See Hamilton*, 556 F.3d at 435 (finding causation based on the combination of the plaintiff being subjected to increased scrutiny at work and "the temporal proximity of [the] termination occurring less than *three months* after [the] EEOC filing"); *Mickey*, 516 F.3d at 525 (considering a case in which an employee was terminated on the *same day* that his employer learned of his filing of a charge with the EEOC). The court is aware of no case in which a court has inferred causation solely from allegations that the protected activity and retaliation took place a full *year* apart, and Mr. Navarro-Teran has cited no such authority. Accordingly, the court finds that the Complaint does not state a claim with regards to Mr. Navarro-Teran's retaliatory discharge claim under Tennessee common law, and that claim will be dismissed.

## II. Hostile Work Environment Claims

Mr. Navarro-Teran has alleged that Embraer allowed him to be harassed and discriminated against on the basis of race and national origin in violation of Title VII and the

THRA,[8] and on the basis of perceived disability in violation of the ADA and TDA. Embraer moves to dismiss these claims on the basis that they are not timely and because they fail to allege sufficient factual content to state a claim for relief.

    A.    **Sufficiency of Allegations**

For a hostile work environment claim, a plaintiff must plead conduct that was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive, and that the plaintiff regarded it as such. *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993). The "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not sufficiently affect the conditions of employment to implicate anti-discrimination laws such as Title VII and the ADA. *Id.*; *Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002) (applying the *Harris* standard to a hostile work environment claim under the ADA and noting that "name-calling, alone" does not demonstrate an abusive environment). Rather, anti-discrimination laws come into play when there is a "discriminatorily abusive work environment" that can detract from employees' job performance or keep them from advancing in their careers. *Harris*, 510 U.S. at 21 (citations omitted). The Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988) (internal citation omitted).

Mr. Navarro-Teran has pleaded sufficient factual content to allow the court to draw the necessary inferences regarding his claim of a hostile work environment on the basis of race and

---

    [8] Just as ADA and TDA claims follow similar analyses, "[a]nalysis of the THRA claim tracks the analysis of the Title VII claim." *Culver v. CCL Label, Inc.*, 455 F. App'x 625, 626 n.1 (6th Cir. 2012).

national origin. The Complaint details not only a series of racially charged insults and taunts over the years that Mr. Navarro-Teran was employed at Embraer, but also an incident in which another employee physically assaulted Mr. Navarro-Teran by throwing a box at his head after braying like a donkey at him. The Complaint also alleges that Mr. Navarro-Teran was given less desirable tasks because he was Hispanic, stating that he was assigned menial cleaning tasks that other, non-Hispanic employees were not assigned and that his shift lead, Mr. Schmidt, assigned him hazardous jobs, including tasks involving unnecessary exposure to human waste. Finally, Mr. Navarro-Teran has alleged that he reported this discriminatory and harassing behavior to members of the human resources department and to others within Embraer, but no one took any action to correct the behavior. These allegations demonstrate conduct that surpasses mere name-calling. Rather, the allegations in the Complaint – insults, physical attacks, and demeaning work assignments – allow the court to draw the inference that the abusive environment was severe and pervasive, such that a reasonable person would find it to be hostile. Accordingly, the court will not grant Embraer's motion to dismiss with regard to Mr. Navarro-Teran's claim of hostile work environment on the basis of race and national origin.[9]

Mr. Navarro-Teran has not, however, pleaded sufficient factual content to support his claim of a hostile work environment on the basis of a perceived disability. As support for this claim, Mr. Navarro-Teran points to his allegations that, in 2011, he was discouraged from seeking medical attention for a shin injury and he was called a "slacker" after being placed on

---

[9] Embraer maintains that Mr. Navarro-Teran has "not alleged what his national origin is," and that his claims of discrimination on the basis of national origin must, therefore, be dismissed. (Docket No. 12, p. 4.) The court can plausibly infer, however, from the allegations that Mr. Navarro-Teran was not an American citizen, that other employees were mocking his English, and that many of the comments were directed at him because he was of Hispanic origin, that Mr. Navarro-Teran was born outside of the United States.

16

light duty. (Docket No. 9, p. 9.) Furthermore, Mr. Navarro-Teran alleges that, after the 2014 surgery on his ankle, he "experienced sarcasm from the HR department" when he returned to work, and a co-worker remarked that the surgery must have been on his brain because he is stupid. (*Id.*) These allegations, which occur three years apart, do not demonstrate a work environment so permeated with discriminatory intimidation, ridicule, or insult as to be considered abusive or hostile. Rather, the limited allegations made by Mr. Navarro-Teran regarding his perceived disability – which are isolated in occurrence and mild in their expression – demonstrate the kind of simple teasing and isolated incident that do not amount to discriminatory changes in the terms and conditions of his employment. As such, the court concludes that the Complaint fails to state a claim of hostile work environment on the basis of a perceived disability.

Mr. Navarro-Teran will, however, be allowed to proceed with his allegations of harassment on the basis of perceived disability to the extent that they augment his claim of a hostile work environment on the basis of race and national origin. Incidents of harassment on the basis of a protected status which are, on their own, insufficient to support a hostile work environment claim "can be combined with incidents of [harassment on the basis of another protected status] to prove a pervasive pattern of discriminatory harassment." *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415–17 (10th Cir. 1987)). After all, "[t]he theory of a hostile-environment claim is that the *cumulative* effect of ongoing harassment is abusive," *Hafford*, 183 F.3d at 515, and, when a plaintiff alleges multiple hostile work environment claims based on different protected classifications, his claims should not be allowed to "fall between two stools" and thereby fail, *Shazor v. Prof'l Transit Mgmt.*, 744 F.3d 948, 958 (6th Cir. 2014). The court will, therefore, allow Mr. Navarro-Teran to

17

proceed on his allegations of discriminatory and harassing conduct on the basis of his perceived disability, to the extent that they show that the racial animus of his supervisors and co-workers was augmented by their bias against his perceived disability.

> B. **Timeliness of the Claims**

Embraer argues that many of the allegedly discriminatory acts that support Mr. Navarro-Teran's hostile work environment claims under Title VII, the ADA, the THRA, and the TDA – many of which occured in 2011 and 2012 – are time-barred. (Docket No. 6, pp. 4–5; Docket No. 12, pp. 2–3.) First, Embraer argues that all of the allegations that support Mr. Navarro-Teran's state-law claims under the THRA and TDA that took place prior to November 3, 2014 are barred by Tennessee's one-year statute of limitations for such claims. (Docket No. 6, pp. 4–5); *see* Tenn. Code Ann. § 4-21-311(d) (THRA); *id.* § 8-50-103(c)(2) (incorporating the THRA's one-year limitations period into the TDA). Second, Embraer argues that the allegations that support Mr. Navarro-Teran's Title VII and ADA claims that occurred prior to July 25, 2014 are barred because they occurred more than 300 days before Mr. Navarro-Teran filed the May 2015 Charge with the EEOC. (Docket No. 12, pp. 2–3.)

Mr. Navarro-Teran acknowledges that certain acts that support his claims occurred outside of the limitation periods, but he argues that the claims themselves are not time-barred under the continuing violation theory (Docket No. 9, pp. 4–6), which "allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002) (allowing an employee to recover for acts occurring more than 300 days before a charge was filed with the EEOC on a continuing violation theory). Because he

alleges that he was subjected to a pattern of harassment and discrimination that continued from his hire to his termination in February 2015 (well within the limitations period), Mr. Navarro-Teran argues that neither dismissal of his claims nor exclusion of alleged events that occurred prior to November of 2014 is merited. (Docket No. 9, p. 6.)

Dismissal of a claim under Rule 12(b)(6) on grounds that it is barred by a limitations period is warranted only if "the allegations in the complaint *affirmatively show* that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (emphasis added). It is true that, with the exception of a few comments related to the surgery on Mr. Navarro-Teran's ankle in early 2015, the vast majority of discriminatory incidents alleged in the Complaint occurred prior to March of 2014, which is months before the cut-off for the applicable limitation periods. (Docket No. 1 ¶¶ 35–37.) The Complaint does allege, however, that Mr. Navarro-Teran "continued to suffer discrimination, harassment, bullying, and sarcastic comments until his termination." (*Id.* ¶ 38.) Although this allegation is woefully general and fails to relate any specific incidents of discriminatory or harassing behavior in the one-year span between January of 2014 and January of 2015, it also does not *affirmatively* demonstrate that Mr. Navarro-Teran's claims are time-barred. Based on the allegations in the Complaint, the court cannot find, as would be necessary to dismiss Mr. Navarro-Teran's claims for being untimely under Rule 12(b)(6), that *no* act that was part of Mr. Navarro-Teran's hostile work environment claims took place within the applicable periods of limitation. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117–18 ("In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.") The court, therefore, cannot (at this stage) dismiss any of Mr. Navarro-Teran's claims as untimely.

## CONCLUSION

For the reasons discussed herein, Embraer's Motion to Dismiss will be granted with respect to Mr. Navarro-Teran's claim of retaliatory discharge under Tennessee common law, but the motion will be denied with respect to Mr. Navarro-Teran's claims for discriminatory termination under the ADA and TDA and for hostile work environment.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge